362 F.2d 83
 W. Willard WIRTZ, Secretary of Labor, United States
Department of Labor, Appellant,
v.
FIRST STATE ABSTRACT AND INSURANCE COMPANY, a Corporation, Appellee.
FIRST STATE ABSTRACT AND INSURANCE COMPANY, a Corporation, Appellant,
v.
W. Willard WIRTZ, Secretary of Labor, United States
Department of Labor, Appellee.
 Nos. 18113, 18114.
 United States Court of Appeals Eighth Circuit.
 June 13, 1966.
 
 1
 William Fauver, Atty., U.S. Dept. of Labor, Washington, D.C., Charles Donahue, Sol. of Labor, Bessie Margolin, Associate Sol., Robert E. Nagle, Atty., U.S. Dept. of Labor, Washington, D.C., and Beverley R. Worrell, Regional Atty., Birmingham, Ala., on the brief, for Secretary of Labor.
 
 
 2
 William H. Sutton, Little Rock, Ark., for First State Abstract & Ins. Co.
 
 
 3
 Before MATTHES and GIBSON, Circuit Judges, and HUNTER, District Judge.
 
 
 4
 HUNTER, District Judge.
 
 
 5
 The Secretary of Labor, as plaintiff, brought this action to enjoin defendant, First State Abstract and Insurance Company, from violating the minimum wage, overtime and record keeping provisions of the Fair Labor Standards Act (29 U.S.C. 201 et seq.), and to restrain defendant from continuing to withhold unpaid minimum wages and overtime compensation due certain of its employees who were engaged in preparing insurance policies, applications, reports and other documents intended for interstate transmission in connection with the transaction of business for out-of-state insurance companies.
 
 
 6
 The defendant admitted noncompliance with the Act's requirements, but claimed that these employees were not subject to the Act. The District Court found that only to the extent the defendant's employees deal with and handle policies transmitted in interstate commerce from the insurers to the insureds through the medium of defendant's agency are the employees engaged in interstate commerce and covered by the Act; held that plaintiff failed to make a case for an award of back pay to any employee and declined to issue any injunction. Both plaintiff and defendant have appealed from those portions of the judgment they deem adverse to them.
 
 
 7
 The facts are relatively undisputed. Defendant is a wholly owned subsidiary corporation of the First State Bank of Lonoke, Arkansas, where it is engaged in a single office in performing title abstract work and in conducting insurance transactions for eleven nationwide insurance companies whose branch offices or agencies are located in Little Rock, Arkansas, and whose home offices are located outside the State of Arkansas. Defendant's insurance activities, which will be described more fully later, generally consist of the writing and selling of fire, of casualty, and of automobile liability insurance of these nationwide insurance companies, and in placing with them applications for Workmen's Compensation and other forms of business liability insurance. It is these insurance activities which are in question here, and it is not contended that any phase of the abstract operation is covered by the Fair Labor Standards Act.
 
 
 8
 Policies of fire, of casualty, and of automobile liability insurance of the nationwide insurance companies are written by defendant's employees and sold directly to the purchaser.[1] In connection with these particular transactions an employee of defendant interviews the prospective purchaser, prepares a detailed application for insurance on printed forms provided by the particular insurance company from its out-of-the-state office or its out-of-the-state printer, collects the premium, and prepares a separate 'daily report' to advise the involved insurance company of the risk to which it is bound. Following each such sale copies of the application, the policy and the daily report are forwarded to the appropriate branch office in Little Rock which in turn forwards these documents to the home or regional office located outside of the state.
 
 
 9
 Workmen's Compensation policies and certain other forms of business liability insurance policies are written at the out-of-state home offices of the insurance companies, after receipt of and consideration of detailed applications which are prepared by certain of defendant's employees at defendant's Lonoke, Arkansas office. When one of these policies is written and approved, the out-of-state home office transmits it directly to defendant's office for delivery to the insured.
 
 
 10
 Each month on an average defendant sells or places, by one of the above described methods, 120 policies at a monthly dollar volume of $6,500 to $7,000 in initial premiums. At the end of each month certain of defendant's employees prepare for each of the insurance companies a detailed 'account current' report based on entries made throughout the month, showing each policy issued, total premiums collected, premiums returned on cancelled policies and commissions due defendant. These reports, together with a check for the sums collected less defendant's commissions and refunded premiums, are forwarded to the respective insurance companies' Little Rock offices which in turn forward them to the appropriate office of the insurance company located outside the state of Arkansas.
 
 
 11
 At the present time the business of First State Abstract and Insurance Company, both insurance and abstract, is performed by two employees. During one transitional period defendant had three employees. A total of four present or past employees are involved in this action.
 
 
 12
 Norene Hicks, employed from October, 1961, to September, 1962, and her replacement, Helen Caperton, employed from September, 1962, to July, 1963, regularly performed the insurance activities above described, including writing and typing insurance policies, preparing applications, daily reports and other statements; posting and compiling the 'account current' reports for each insurance company; preparing checks; sending statements, collecting and posting payments and making deposits. In addition to the initial premiums collected on new policies these two employees processed collections of recurring premiums on a daily basis. Mrs. Caperton was paid 50cents an hour for the first two weeks, and 75cents an hour for the rest of her employment. Mrs. Hicks was paid $1.00 an hour. These two employees apparently performed no overtime work.
 
 
 13
 Employee Eunice Brown has been in charge of defendant's office since 1961. In addition to her office management duties she regularly performed the same duties as did Hicks and Caperton, including the writing and typing of policies, applications, reports, statements, waiting on customers, and the posting and maintaining necessary accounts pertaining to the insurance transactions. She has regularly worked a 51/2 to 6 day a week schedule (44-48 hours) for a salary of $350.00 a month without additional compensation for hours over 40 per week.
 
 
 14
 Employee Judy High does mostly abstract work but upon occasion she has, among other things, waited on insurance customers and has typed letters for forwarding to the Little Rock office of the various insurance companies. Mrs. Caperton when asked the frequency with which Judy High assisted in the insurance operation replied that usually some time during each day Miss High 'would do something, maybe post checks that come in, take collections from insureds who came in to pay.' * * * 'occasionally if she was caught up in abstracts (the principal work) she would help us in insurance; we usually had something to do in insurance.' Mrs. Hicks testified Miss High would take in insurance collections and sometimes if Mrs. Hicks made an error in the insurance Miss High would help her check to find the error. Miss High described her work as mainly abstracting but that she did insurance when it was necessary and when she could help and there was some overflow. She testified she had typed policies, had taken in collections, entered the premiums on the account current and had written checks for the insurance companies. While unable to specify exactly how frequently she had done these things she related that it had been more often since Mrs. Caperton had left (July, 1963) since there was only Mrs. Brown and herself in the office. She also had performed work in connection with the receipt of mail and over-the-counter payments, 'sometime during every week' and in connection therewith would fill in the deposit book and pull the statement from the accounts receivable and mark it paid. Even when Mrs. Brown was present Miss High waited on customers and if they wanted to pay an insurance premium Miss High would take the money. If the customer wanted an insurance policy Miss High would either refer the customer to Mrs. Brown, or, upon occasion, take the information regarding the insurance the purchaser desired, and being unable to figure the policies, would give the information to Mrs. Brown. Miss High has performed these insurance duties right up to the present time. Miss High was paid 50cents an hour from November, 1961, to March, 1962, 75cents an hour from March, 1962, to March, 1964, and thereafter was paid at the rate of $1.00 an hour.
 
 
 15
 The principal issue before us on this appeal is whether the four mentioned employees of the defendant were engaged in interstate commerce or in the production of goods for interstate commerce within the meaning of the Fair Labor Standards Act.
 
 
 16
 In United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944) the Supreme Court, through Mr. Justice Black, declared that an insurance company which conducts a substantial part of its business transactions across state lines is "engaged in commerce among the several states' and subject to regulation by Congress under the Commerce Clause. We believe it clear that defendant's insurance business, conducted as we have described it above, is an engagement in interstate commerce and not an isolated, local activity. Cf.Mabee v. White Plains Publishing Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607 (1946).
 
 
 17
 The question of whether certain employees of a business such as the one before us are 'engaged in commerce', as that term is used in Sections 206 and 207 of the Act, requires, however, that we focus on the activities of the employees and not on the business of the employer. It is the activities of the individual employees, not those of the employer, that are the controlling factor. Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959). Practical considerations, not technical conceptions, are to be used in making the determination, and in furtherance of the purpose of the Act a liberal construction is to be given to the language contained therein. Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196 (1955). As we stated in Mitchell v. Kroger Company, 248 F.2d 935, 938 (C.A.8th, 1957): 'While Congress obviously has not extended coverage under the Act to all activies affecting commerce, as it might do if it so chose, this does not and, as indicated by the Supreme Court in the Overstreet opinion, should not narrowly circumscribe the meaning of the phrase 'engaged in commerce' or detract in any way from the statutory definition as to the meaning of commerce itself. Such definition is not to be given a strained and narrow construction. Transportation, transmission or communication among the several states are literally within the Act's coverage.'
 
 
 18
 Employees whose activities are so directly and vitally related to interstate commerce as to be in practice and legal contemplation a part thereof, are to be considered as engaged in interstate commerce, and may, therefore, be within the provisions of the Fair Labor Standards Act. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656 (1943); McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538 (1943); Beneficial Finance Co. of Wisconsin v. Wirtz, 346 F.2d 340 (C.A.7th, 1965); Durkin v. Joyce Agency, 110 F.Supp. 918 (N.D.Ill., 1953), affirmed, Mitchell v. Joyce Agency, 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740 (1955).
 
 
 19
 We are persuaded that the described work and activities of the four mentioned employees are such as to result in each of them being engaged in interstate commerce within the intent of the Fair Labor Standards Act. All of these employees' work which relates to defendant's insurance business contributes so directly, materially and vitally to interstate commerce as to be a part thereof. In practical effect these employees in the manner and to the degree stated are transacting business in interstate commerce for nationwide insurance companies by soliciting insurance sales, processing insurance applications, preparing or typing policies, collecting premiums, and compiling and checking essential reports and statements, all for forwarding to out-of-state home offices by way of the Little Rock Offices; and by, in return, receiving from out-of-state locations insurance policy forms and other insurance materials and communications. All of this constitutes transmission and communication between the states within the meaning and literal terms of the statute. See, Mitchell v. Kroger Company, supra.
 
 
 20
 In the South-Eastern Underwriters Association case, supra, it is recognized that the interrelationship, interdependence and integration of activities between home offices and local agents engaged in soliciting prospects, utilizing policy forms sent from home offices and making regular reports to their companies by mail, telephone or telegraph are practical aspects of the insurance companies' method of doing business. The nationwide business of such insurance companies places them in interstate commerce activities. The employees or persons who actually do that work, whether they be located in the branch office of the particular insurance company or employed in an office such as that of the defendant, are doing essential and vital work which, when practically viewed, must be considered as interstate activity. Through their work and activities they serve as the fingers of the branch office, transmitting the results of their activities to the branch office for the purpose of and where they are ultimately forwarded to the home office located in another state. The branch office is but a convenient intermediate step in the process of getting them to their final destination.
 
 
 21
 Although defendant contended and the trial court held that Miss High's insurance activities were not sufficiently substantial to bring her within the scope of the Act such a conclusion based on the undisputed facts we have mentioned is clearly erroneous. Her described insurance activities, some of which were on a daily basis, were not inconsequential, sporadic, or isolated. Rather, they were as regular and continuous as the needs of her employment required. See, Mid-Continent Petroleum Corp. v. Keen, 157 F.2d 310 (C.A.8th, 1946); New Mexico Public Service Company v. Engel, 145 F.2d 636 (C.A.10th, 1944); Southern California Freight Lines v. McKeown, 148 F.2d 890 (C.A.9th, 1945).
 
 
 22
 Since we have reached the conclusion that all four employees are engaged in interstate commerce and are within the coverage of the Act it is unnecessary to consider whether they are engaged in the production of goods for interstate commerce.
 
 
 23
 The District Court found that employee Eunice Brown was excepted from the minimum wage and overtime provisions by virtue of Section 13(a)(1) of the Act, which exempts those employees who are employed in a bona fide administrative capacity as that term is defined by regulations of the Administrator. Pursuant thereto the Administrator issued appropriate regulations which, among other conditions, exempted only those of specified minimum salary. The District Court mistakenly found that the minimum salary for this exemption was $75.00 per week from 1961 to September, 1963, although the actual salary required for the exemption was $95.00 per week during this period and was raised to $100.00 per week, effective September 30, 1963.[2] Mrs. Brown received a salary of $350.00 per month. She therefore did not meet the requirements of this exemption at any time in her employment.
 
 
 24
 Although the District Court found that to the extent defendant's employees deal with and handle insurance policies they are engaged in interstate commerce, it ruled that plaintiff failed to make a case for an award of back pay to any employee because plaintiff did not specifically show during any particular work week the actual amount of time so spent by the particular employee.
 
 
 25
 An employer who has not kept the records required by Section 11(c) of the Act cannot be heard to complain that there is no evidence of the precise amount of time worked in interstate commerce, including overtime so worked. It is sufficient if the plaintiff produces evidence to show the amount and extent of that work as a matter of fact and reasonable inference. If defendant had kept the employee work records which the Act required it to keep, the information necessary to show when and for what periods of time each employee performed work in interstate commerce would have been available to plaintiff. It was the absence of such records that prevented plaintiff from making this showing.
 
 
 26
 Plaintiff has shown that the four employees worked on interstate as well as intrastate business; that the two classes of work were commingled in defendant's business operations and that defendant did not attempt to distinguish between the two in the payment of wages. Under such circumstances plaintiff has made a prima facie showing that those employees are entitled to the protection of the Act. Guess v. Montague, 140 F.2d 500 (4th C.C.A.1943). There is strong authority for the proposition that if an employee's duties are partly interstate and partly intrastate, his entire compensation must conform to the provisions of the Act. See, Crook v. Bryant, 265 F.2d 541, 544 (4th C.A., 1959), and cases there cited. It is the rule that when employment is in interstate commerce or in producing goods for interstate commerce the burden is on the employer to show the segregation if he claims it. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); Hagan v. Goldberg, 291 F.2d 249, 251 (C.C.A. 9, 1961); Mitchell v. Owen, 292 F.2d 71 (C.C.A.6th, 1961). In the instant case there has been no attempt on the part of defendant to segregate the interstate work from the intrastate work or to keep any records of the time spent by the employees in either type of work. Under such circumstances the entire pay of the employees must be in accordance with the Act.
 
 
 27
 Plaintiff has requested that defendant be restrained from withholding in the future any unpaid minimum wages and overtime compensation due its employees under the Act and from failing to keep the records required thereby. We are presently unaware of any reason why the injunction should not issue. However, this is a matter that is committed in the first instance to the District Court for its consideration which should be exercised in the light of matters ruled in this opinion.
 
 
 28
 We reverse as to the appeal by the Secretary of Labor; affirm as to the appeal by defendant; and remand this cause for appropriate findings and for an order restraining defendant from withholding the back wages which are due Eunice Brown, including overtime; from withholding the back wages which are due Norene Hicks, Judy High, and Helen Caperton, in violation of the Act and to reconsider the prayer for injunctive relief.
 
 
 
 [1]
 While most of the purchasers of the automobile liability insurance lived in Arkansas occasionally one would move outside Arkansas and thereafter renew a policy
 
 
 [2]
 See, 23 F.R. 8963; 28 F.R. 9506; 29 C.F.R. 541.117