SAVOIE, Judge.
In this action, plaintiff, David Cedotal, seeks to recover overtime wages and penalties allegedly due under the Fair Labor Standards Act (FLSA). Defendants are Tony Forti and Sam and Joe Morrow d/b/a Bayou Truck Stop, plaintiff’s former employer. From a judgment in favor of defendants in the trial court, plaintiff appeals.
Plaintiff raises two assignments of error:
1) the trial court erred in failing to award compensation for overtime;
2) the trial court erred in failing to award liquidated damages.
At the trial, David Cedotal testified that he worked at Bayou Truck Stop in Grosse Tete from January, 1979, through March, 1981. Bayou Truck Stop, located off Interstate 10, serviced trucks by supplying gas, diesel fuel, services, and food; Cedotal was an attendant/mechanic. When Cedotal was hired by Tony Forti, manager of Bayou Truck Stop, he was told he would be paid at the rate of $50.00 per day. He was to work six days a week, twelve hours per day. Cedotal received a check each week for $250.00; Cedotal testified that his gross pay was $306.00. In 1980, his pay was raised by $50.00 per week. He and Forti never agreed upon an hourly wage rate or overtime pay; Cedotal never received a check stub from his superiors at Bayou Truck Stop. Cedotal also never signed in or punched a time clock.
Plaintiff also called two former employees of Bayou Truck Stop to testify. Allen King worked at the truck stop for six months partly while plaintiff was there; he was paid $45.00 per day for a twelve hour day. He also did not receive a check stub, and did not sign in or punch a time clock. Likewise, Nevada Shepard, who also was employed at Bayou Truck Stop while Cedo-tal was there, testified that he was paid by the week, either $200.00 or $250.00, and that he worked twelve hour days. He received no check stub, nor did he punch a clock.
Defendant Joe Morrow, a lessee operator of Bayou Truck Stop, testified that most employees of Bayou Truck Stop, and specifically David Cedotal, were hired to work six twelve hour days per week at a flat rate of pay.[1] If the employee worked less hours, he was paid a portion of that flat rate. For example, Joe Morrow explained the proce *407 dure when Cedotal worked only three twelve hour days out of the six day week: “three days, we took a portion of that week and paid him based upon what he was suppose [sic] to receive on six days. That should be one-half.”
Joe Morrow testified that in determining the flat rate paid, he multiplied an amount over minimum wage by forty hours and then multiplied one and one-half times the amount by the thirty-two hours over forty hours. He had prepared an exhibit for this lawsuit which showed that Cedotal was paid $3.50 per hour for forty hours, and $5.25 per hour for over forty hours through early 1980. His pay was raised to $3.75 hourly and $5.63 overtime in February, 1980, and then to $4.26 hourly and $6.39 overtime in September, 1980. For the week of March 15, 1979, the exhibit shows that Cedotal worked seventy-two hours and was paid $316.00; according to the exhibit, the wages due were $308.00, and there was an overpayment of $8.00. The exhibit covers all the time plaintiff worked for Bayou Truck Stop and shows that defendants overpaid or underpaid Ce-dotal for every week but two.
When asked if he had ever discussed an hourly wage rate with Cedotal, Morrow testified that he could not remember giving Cedotal an hourly wage rate. He also testified that he did not use the hourly wages set forth in the exhibit when he actually paid plaintiff; instead, he used these hourly wages after being investigated by the Labor Board.[2]
Cedotal, when questioned about the exhibit prepared by Morrow, disputed the hours worked set forth on the exhibit; he testified that he worked seventy-two hours each week of his employment, but he introduced no documentation to support the testimony.
COVERAGE UNDER FLSA
The provision of FLSA under which Cedotal seeks to recover reads as follows:
§ 207. Maximum hours
(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C.A. § 207(a)(1).
Under 29 U.S.C.A. § 207(a)(1), FLSA applies to three sets of employees: those engaged “in commerce,” those engaged “in the production of goods for commerce,” and those who are “employed in an enterprise engaged in commerce or in the production of goods for commerce.” “Commerce” is defined as “trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.” 29 U.S.C.A. § 203(b). The case law has interpreted “engaged in commerce” in the following manner: “[ejmployees whose activities are so directly and vitally related to interstate commerce as to be in practice and legal contemplation a part thereof, are to be considered as engaged in interstate commerce, and may, therefore, be within the provisions of the Fair Labor Standards Act.” Wirtz v. First State Abstract and Insurance Co., 362 F.2d 83, 87 (8th Cir. 1966) (citations omitted). In Brennan v. Ventimiglia, 356 F.Supp. 281, 282 (N.D.Ohio 1973), the court in determining whether a gasoline service station near an interstate was an enterprise engaged in commerce, noted that the service station employees themselves were engaged in commerce “because they service cars which *408 have been or will be used for interstate commerce.”
We find that Cedotal was “engaged in commerce” under FLSA. Bayou Truck Stop was located just off Interstate 10, and Cedotal serviced cars and trucks which had been or would be traveling on the interstate from which it can be inferred that they had been or would be used for interstate commerce. Defendants raised the question of coverage under the FLSA during the trial, yet they were contending that Bayou Truck Stop did not fall under the statutory definition of an “enterprise engaged in commerce.”[3] The trial judge assumed that FLSA was applicable. We find that because Cedotal himself was engaged in commerce, he is covered by FLSA.
RATE OF PAY
In determining that the overtime wages paid Cedotal were sufficient under FLSA, the trial judge reasoned as follows:
Assuming that the Fair Labor Standards Act of 1938 is applicable, the correct formula in computing David’s [Cedotal’s] hourly wages shows this contention [that wages paid met overtime requirements] to be true, even if he were paid only $306.00 per week, as David testified:
x = regular hourly rate
1.5x = overtime rate
40x + 32(1.5)x = $306.00
88x = $306.00
x = $3.48
1.5x = $5.22
Thus, plaintiff was paid $3.48 per hour for the first forty hours of work, and $5.22 for overtime hours. This is more than the minimum wage mandated by the Fair Labor Standards Act.
Under FLSA, wages are to be “not less than one and one-half times the regular rate” at which the employee is paid. According to the case law “ ‘regular rate’ is not a hypothetical construction but an ‘actual fact.’ ” Brennan v. Valley Towing Co., Inc., 515 F.2d 100, 105 (9th Cir.1975); see also Hodgson v. Baker, 544 F.2d 429, 432 (9th Cir.1976), cert. denied, 430 U.S. 946, 97 S.Ct. 1581, 51 L.Ed.2d 793 (1977). In Brennan, the court further stated that “the Act does not allow [an employer] to designate unilaterally what the ‘regular rate’ will be, then, on the basis of that designation, pay employees a predetermined sum for up to fifty hours per work week-" Brennan, 515 F.2d 105-06 (quoting Brennan v. Elmer’s Disposal Service, Inc., 510 F.2d 84 (9th Cir.1975)). In Hodgson v. Elm Hill Meats of Kentucky, Inc., 327 F.Supp. 1009, 1014 (E.D.Ky.1971), the court said there were two indispensable factors for compliance with the overtime provisions of the Act: “(1) an explicit understanding between the parties as to the existence of a regular wage rate that is stepped up for overtime hours and (2) a careful practice of recording the hours worked overtime by each employee and paying him for them at the increased rate.” (quoting Nunn’s Battery & Electric Co. v. Goldberg, 298 F.2d 516 (5th Cir.1962)).
In the case before us, both Cedotal and Morrow as well as other former employees of Bayou Truck Stop testified that there was never an hourly wage rate discussed. According to the case law, we must disregard Morrow’s after the fact calculations of the hourly wage rate, particularly where use of his figures produces regular over-payments or underpayments of pay. The employees were all hired at a fixed rate of pay per day and per week.
The proper method of determining Cedo-tal’s regular rate of pay is to divide his weekly pay by the number of hours worked. Sikes v. Williams Lumber Co., 123 F.Supp. 853 (E.D.La.1954). For the hours worked over forty, Cedotal is entitled to one-half the regular rate for each hour over forty in addition to the fixed weekly salary which he has already received. Sikes, 123 F.Supp. at 855. See also Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942).
Based on the case law under the Fair Labor Standards Act, we must reverse the *409 trial court’s finding that plaintiff was properly paid overtime.
OVERTIME HOURS WORKED
An employer is required to keep records of the wages and hours of his employees. 29 U.S.C.A. § 211(c). To show the amount of overtime work performed, the employee need only show that he has in fact performed the services for which he was improperly compensated and must produce sufficient evidence to show the amount and extent of work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence to negate the inference to be drawn from the employee’s evidence. Williams v. Tri-County Growers, Inc., 747 F.2d 121 (3rd Cir.1984).
In our case, Cedotal testified that he worked at Bayou Truck Stop for seventy-two hours each week while he was there. Check stubs showing the wages paid and hours worked as well as the exhibit were introduced by Cedotal to show the amount of work he performed. The defendants stipulated that the check stubs were more accurate than the exhibit, and that where there were discrepancies, the check stubs should control. In our judgment, the check stubs are sufficient to establish the number of overtime hours worked.
Check stubs are missing for November and December of 1979; January, April, and December of 1980; and January of 1981. The exhibit also shows that Cedotal did not work during those months. We find that Cedotal’s testimony that he worked seventy-two hours all of the time he worked at Bayou Truck Stop is rebutted by defendants’ exhibit and check stubs which show that he did not work during the months listed above.
PRESCRIPTION
Causes of action under FLSA are subject to a two year prescriptive period, unless the cause of action arises out of “a willful violation,” in which case the prescriptive period is three years. 29 U.S.C.A. § 255(a). In order for a violation to be “willful”, the employer must know or show reckless disregard for the matter or for whether its conduct is prohibited under FLSA. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); Halferty v. Pulse Drug Company, Inc., 826 F.2d 2 (5th Cir.1987).
In this case, Joe Morrow testified that he was aware that FLSA might apply to his business; for that reason, he calculated the flat rate of pay to include both minimum wage and overtime pay. Morrow clearly did not know that his method of calculation did not comply with FLSA; he thought he was paying overtime properly. Morrow basically determined the amount of pay for the maximum hours an employee would work, including regular pay and overtime, and then gave the employee a portion of that pay if he worked less. Thus, the employee benefitted when working less hours, since he was getting a portion of overtime wages as well as regular wages. Furthermore, from the record, it appears that Bayou Truck Stop was a small “Mom and Pop” operation, owned by Morrow and his brother, managed by one person, with a small number of employees.
For these reasons, we can not says that Morrow acted with reckless disregard in the payment of overtime wages. Based on our findings, the appropriate prescriptive period is two years.
According to the case law, “[a] separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed.” Shandelman v. Schuman, 92 F.Supp. 334, 335 (E.D.Pa.1950) (citations omitted); Mitchell v. Lancaster Milk Co., 185 F.Supp. 66, 70 (M.D.Pa.1960). Thus, Cedo-tal can only recover unpaid overtime compensation for the weeks following April 30, 1980, since suit was filed on April 30, 1982.
*410 OVERTIME COMPENSATION DUE CEDOTAL
Our calculations show that Cedotal is entitled to $1821.52 in overtime compensation.[4]
WAIVER
Defendants contended that plaintiff waived any rights he may have had to overtime compensation by virtue of a document signed by Cedotal on February 10, 1982. In the document, Cedotal stated that the Department of Labor calculated that Cedotal was due $2717.01 in overtime compensation, and that he waived any overtime due.[5] The waiver was on a form supplied by the U.S. Department of Labor. No consideration is set forth in the document for Cedotal’s waiver.
Cedotal contends that he was not aware of what he was signing and that there were no numbers filled in on the document. Joe Morrow testified that he witnessed numbers being filled in prior to Cedotal signing the document. Morrow also said that Ce-dotal never waived his rights by signing the document. According to Morrow, “this waiver is only good if you pay any set amount to the employee. This waiver does not take away ... any right that the employee has to take action against you [the employer]....”
Under 29 U.S.C.A. § 216(c), provision is made for an employee to waive unpaid overtime compensation in the following manner:
Thé Secretary is authorized to supervise the payment of the ... unpaid overtime compensation owing to any employee ... under ... section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have ... to such ... unpaid overtime compensation....
According to the case law, a valid waiver requires an agreement upon an amount to be paid and payment, which must be supervised by the Secretary of the Department of Labor. Walton v. United Consumers Club, Inc., 786 F.2d 303 (7th Cir.1986).
In the case before us, there was no agreement between Cedotal and an agent of Bayou Truck Stop that he would be paid the amount defendants owed him, or a smaller amount, nor was there any payment by defendants or supervision by the Secretary.
The Eleventh Circuit has held that an employee may compromise an FLSA claim in the context of a suit brought by the employee against the employer under 29 U.S.C.A. § 216(b). Lynn’s Food Stores, Inc. v. United States Department of Labor, 679 F.2d 1350 (11th Cir.1982). In this instance the district court judge may perform the function of the Secretary in ensuring that the compromise is reasonable. In our case, Cedotal did not sign the waiver in the context of a lawsuit for unpaid overtime compensation.
For these reasons, we find that the waiver does not bar Cedotal’s action against defendants.
PENALTIES
An employer who fails to comply with the overtime provisions of FLSA is liable to the employee for the unpaid overtime compensation and “an additional equal amount as liquidated damages.” 29 U.S. C.A. § 216(b). Further, “[t]he court in such action shall, in addition to any judgment awarded to the plaintiff ..., allow a reasonable attorney’s fee to be paid by the defendant, and costs of the action.” 29 U.S.C.A. § 216(b).
A defense to the mandatory award of liquidated damages is that the employer is in good faith and has reasonable grounds for its belief that it was not in violation of the FLSA. 29 U.S.C.A. § 260. Trans World Airlines, Inc. v. Thurston, 105 S.Ct. at 625 n. 22. LeCompte v. Chrysler Credit Corp., 780 F.2d 1260 (5th Cir.1986).
We find that defendants acted in good faith and reasonably believed they were paying the proper overtime compensation. *411 For these reasons, we find that plaintiff is not entitled to liquidated damages.
Although Cedotal is not entitled to liquidated damages due to Bayou Truck Stop’s good faith, an award for attorney’s fees is mandatory where Cedotal is entitled to a judgment for unpaid overtime. See Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185, 1191, n. 18 (5th Cir.1979). We find an award of $750.00 in attorney’s fees to be reasonable in this case.
EXCEPTION OF NO CAUSE OF ACTION
Tony Forti filed an exception of no cause of action on the basis that he was not an owner of Bayou Truck Stop, as were the Morrows, and thus could not be liable under FLSA. Cedotal did not contest this; the trial judge did not rule on the exception because he found that defendants had properly paid plaintiff. However, we find merit to the exception and dismiss Forti from the suit.
For these reasons, we reverse the judgment of the trial court holding that plaintiff is not entitled to any overtime compensation. We affirm that part of the judgment holding that plaintiff is not entitled to liquidated damages. We render judgment in favor of plaintiff against defendants Sam and Joe Morrow d/b/a Bayou Truck Stop in the amount of $1821.52, with interest from date of judicial demand, and with attorney’s fees of $750.00. All costs to be paid by defendants.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
COVINGTON, C.J., concurs and assigns reasons.
APPENDIX A
WEEK WORKED HOURS WORKED WAGES PAID CALCULATION OVERTIME DUE
1. 05/08/80 60 $275.00 1/2(275-=-60)x(60-40) $ 46.80
2. 05/15/80 72 330.00 1/2(330-=-72)x(72-40) 73.28
3. 05/22/80 60 275.00 See No. 1 45.80
4. 05/29/80 60 275.00 See No. 1 45.80
5. 06/05/80 60 275.00 See No. 1 45.80
6. 06/12/80 60 275.00 See No. 1 45.80
7. 06/19/80 60 275.00 See No. 1 45.80
8. 06/26/80 72 330.00 See No. 2 73.28
9.07/03/80 48 220.00 1/2(220-^48) X (48-40) 18.32
10. 07/10/80 60 275.00 See No. 1 45.80
11. 07/17/80 60 275.00 See No. 1 45.80
12. 07/24/80 60 275.00 See No. 1 45.80
13. 07/31/80 48 220.00 See No. 9 18.32
14. 08/07/80 48 220.00 See No. 9 18.32
15. 08/11/80 24 110.00 No Overtime -0-
16. 08/22/80 48 220.00 See No. 9 18.32
17. 08/28/60 60 275.00 See No. 1 45.80
18. 09/04/80 60 275.00 See No. 1 45.80
19. 09/11/80 60 275.00 See No. 1 45.80
20. 09/18/80 60 275.00 See No. 1 45.80
21. 09/25/80 60 275.00 See No. 1 45.80
22. 10/02/80 72 375.00 1/2(375-=-72) x (72-40) 83.52
23. 10/09/80 60 312.50 1/2(312.50 ⅛60) X (60-40) 52.20
24. 10/17/80 72 375.00 See No. 22 ' 83.62
25. 10/23/80 60 312.50 See No. 23 52.20
26. 10/30/80 72 375.00 See No. 22 83.52
27. 11/06/80 60 312.60 See No. 23 52.20.
28. 11/13/80 72 375.00 See No. 22 83.52
29. 11/20/80 60 312.50 See No. 23 52.20
30. 11/27/80 72 375.00 See No. 22 83.62
31. 02/05/81 72 375.00 See No. 22 83.52
32. 02/12/81 72 375.00 See No. 22 83.52
33. 02/19/81 72 375.00 See No. 22 83.52
34. 02/26/81 72 375.00 See No. 22 83.52
35. 03/04/81 1 125.00 No Overtime —0—
TOTAL $1821.52
*412 COVINGTON, Chief Judge, concurring:
Because of the holding in Hodgson v. Elm Hills Meats of Kentucky, Inc., I concur.

. Cedotal’s attorney called Sam Morrow, brother of Joe and also a lessee operator, to testify under cross-examination. Sam was unfamiliar with the procedures for paying employees at the truck stop, that being taken care of by Joe.

. The U.S. Department of Labor investigated Bayou Truck Stop. The Department of Labor never filed suit against defendants.

. For an employer to be covered by FLSA under the "enterprise" coverage, the enterprise must have "an annual gross volume of sales made or business done." at "not less than $250,000.” 29 U.S.C.A. § 203(s)(l).

. Our calculations by which we determined the amount due Cedotal are in Appendix A.

. The calculations of the Department of Labor showed that Cedotal was due $2717.01 for overtime compensation from September, 1979, through February, 1981.