## DAVIS et al. v. GOODMAN LUMBER CO., Inc.

### No. 5015.

Circuit Court of Appeals, Fourth Circuit.

Feb. 2, 1943.

Edwin C. Gregory, Sr., of Salisbury, N. C. (Edwin C. Gregory, Jr., of Salisbury, N. C., on the brief), for appellants.

Stahle Linn, of Salisbury, N. C. (J. Giles Hudson, of Salisbury, N. C., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The question in this case is whether Goodman Lumber Company, a North Carolina corporation, is subject to the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219, with respect to its manufacturing business which is of small extent in comparison with the retail business in lumber in which it is chiefly engaged.

The complainant's employees brought suit to recover unpaid minimum wages and overtime compensation in divers amounts alleged to be due under the Act for services rendered to the corporation between January 1, 1939 and March 24, 1941 in the purchase and sale of lumber and in the production of rollers for mill machinery intended to be shipped in interstate commerce. During the years 1939 and 1940 the gross sales of lumber by the corporation were $264,529 and $345,999 respectively, of which by far the greater part were sales at retail within the State. But, in addition, the defendant corporation participated to a limited extent in the manufacture of rollers for cotton mills. The rollers consisted of metal shafts one and a half inches in diameter and three and a half to five feet long with wood glued on each side and metal pulley wheels at each end. The shafts were made by iron workers or foundries and sent to the Goodman Company so that the wooden attachments might be processed and glued to the shafts and then returned to the foundries where the wood was lathed and the pulley wheels attached. The Goodman Company performed less than ten per cent of the manufacturing process. The proceeds of this business done by the Goodman Company in 1940 and 1941 amounted approximately to $11,750 and $8,240 respectively, and of the rollers handled by the Goodman Company twenty-five per cent were sold and shipped by the foundries outside the State. The evidence indicates that two workmen em-

ployed by the Goodman Company were continually engaged in this activity under the supervision of a foreman during the period in question.

▓▓▓ Upon this state of facts the District Court was of the opinion that, as the Goodman Company was engaged primarily in the retail business of selling lumber in North Carolina, it was not engaged in commerce within the terms of the Act, and also that the employees were excluded from the wage and hour requirements contained in §§ 6 and 7 of the Act, 29 U.S.C.A. §§ 206 and 207, by the exemption provisions of § 13 (a) (2) of the Act, 29 U.S.C.A. § 213(a) (2). Insofar as the employees engaged in the retail business of the defendant were concerned, this conclusion was obviously correct, for the exemption excludes from the wage and hour provisions of the Act "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce". See White Motor Co. v. Littleton, 5 Cir., 124 F.2d 92. But, in our opinion, it was error to hold that the manufacturing business of the defendant was so negligible and unimportant as to escape altogether from the requirements of the Act. It is true that, as compared with the proceeds of the retail sales, the return from the roller business was small. But it was nevertheless substantial; and the manufacturing operations were continuous for two years or more·and required the services of at least two workers and a foreman. There are intimations in the evidence that other employees, who handled the large amount of lumber that passed through the plant, may have had some incidental contact with the material ultimately fashioned and applied to the rollers, but so far as we can ascertain from the evidence before us their services seem to have been too unsubstantial and too remote from the manufacturing process to form a part of it. As to them we make no finding, but confine our determination to the holding that the workers actually engaged in processing the wood and affixing it to the cores of the rollers were subject to the wage and hour provisions of the Act. Walling v. Jacksonville Paper Co., 63 S.Ct. 332, 87 L.Ed. ——. Cf. Walling v. Peoples Packing Co., Inc., 10 Cir., 132 F.2d 236.

▓▓ Although the amount of manufacturing done by the defendant corporation was small and only twenty-five per cent of the goods produced was shipped in interstate commerce, the business did not fall outside the provisions of the Act. The character rather than the size of an activity is the controlling feature. Thus in United States v. Darby, 312 U.S. 100, 123, 657, 61 S.Ct. 451, 461, 85 L.Ed. 609, 132 A.L.R. 1430, where the constitutionality of the Fair Labor Standards Act was sustained, we find the Chief Justice saying: " * * * Congress, to attain its objective in the suppression of nationwide competition in interstate commerce by goods produced under substandard labor conditions, has made no distinction as to the volume or amount of shipments in the commerce or of production for commerce by any particular shipper or producer. It recognized that in present day industry, competition by a small part may affect the whole and that the total effect of the competition of many small producers may be great."

In National Labor Relations Board v. Fainblatt, 306 U.S. 601, 307 U.S. 609, 59 S. Ct. 668, 83 L.Ed. 1014, the National Labor Relations Act was held applicable to a business of small volume in which, as in the instant case, the employers processed goods and returned them to the owners who shipped them in interstate commerce. The court said (306 U.S. 606, 607, 59 S.Ct. 671) :

"Nor do we think it important, as respondents seem to argue, that the volume of the commerce here involved, though substantial, was relatively small as compared with that in the cases arising under the National Labor Relations Act [29 U.S. C.A. § 151 et seq.] which have hitherto engaged our attention. The power of Congress to regulate interstate commerce is plenary and extends to all such commerce be it great or small. Hanley v. Kansas City Southern R. Co., supra [187 U.S. 617, 23 S. Ct. 214, 47 L.Ed. 333]. The exercise of Congressional power under the Sherman Act, * * * the Clayton Act, * * * the Federal Trade Commission Act, * * * or the National Motor Vehicle Theft Act, * * * has never been thought to be constitutionally restricted because in any particular case the volume of the commerce affected may be small. The amount of the commerce regulated is of special significance only to the extent that Congress may be taken to have excluded commerce of small volume from the operation of its regulatory measure by express provision or fair implication.

" * * * Given the other needful conditions, commerce may be affected in the

same manner and to the same extent in proportion to its volume, whether it be great or small. Examining the Act in the light of its purpose and of the circumstances in which it must be applied we can perceive no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected more than that to which courts would apply the maxim de minimis."

See, also, Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U. S. 453, 467, 58 S.Ct. 656, 82 L.Ed. 954; National Labor Relations Board v. A. S. Abell Co., 4 Cir., 97 F.2d 951, 954.

■ These decisions lead us to conclude that the employees engaged in the manufacturing business of the Goodman Company were entitled to the protection of the statutory standards, although by far the greater part of the corporation's business consisted of a retail establishment chiefly engaged in intrastate commerce, whose employees were exempt from the wage and hour provisions of the Act. The propriety of applying the Act to a separate and distinct department of an employer's business while recognizing that another part is exempt from the statute, has been recognized in similar situations. Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52; Fleming v. American Stores Co., D.C.E.D. Pa., 42 F.Supp. 511.

The judgment of the District Court must therefore be reversed and the case remanded for further proceedings.

Reversed and remanded.