## WABASH RADIO CORPORATION v. WALLING.

### No. 10377.

Circuit Court of Appeals, Sixth Circuit.
June 9, 1947.

Gordon B. Wheeler and Marshall M. Uhl, both of Grand Rapids, Mich. (J. A. McClain, Jr., R. B. Elster and J. H. Miller, all of St. Louis, Mo., and Marshall M. Uhl and Gordon B. Wheeler, both of Grand Rapids, Mich., on the brief; Uhl, Bryant, Snow & Slawson, of Detroit, Mich., of counsel), for appellant.

---

**392**

Morton Liftin, of Washington, D. C. (William S. Tyson, Bessie Margolin, Aaron A. Caghan, Morton Liftin, and Eugene Green, all of Washington, D. C., on the brief), for appellee.

Before HICKS, ALLEN, and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a decision of the District Court enjoining the appellant from further violating the provisions of § 15(a) (2) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., 29 U.S.C.A. § 201 et seq., and directing it to pay its employees one and a half times their hourly rate for overtime.

The Ann Arbor Railroad (hereinafter called the railroad) is a common carrier by rail and water and is an exempt employer under § 13(b) (2) of the Fair Labor Standards Act. Appellant, a wholly owned subsidiary of the railroad, is a carrier of intelligence by air, maintaining and operating radio-telegraph facilities. It was formed by the railroad in 1930 for the purpose of obtaining a radio license which had theretofore been held and exercised by the railroad, renewal of which had been denied by the then Federal Radio Commission (now Federal Communications Commission). Under the agreement between the railroad and the appellant which at all times during this period has been fully complied with, the railroad company is required to pay appellant all amounts expended in the maintenance and operation of its radio stations. It is further agreed in the contract that the appellant will not discriminate against the railroad nor give it preference as against others desiring to avail themselves of its services.

The only station now operated by the appellant is situated at Frankfort, Michigan. The railroad uses appellant's facilities in connection with car ferries which it owns and operates between Wisconsin and Michigan, sending and receiving radio messages in furtherance of transportation, reconsignment, diversion of cars, and the makeup of trains.

In accordance with its license the appellant is authorized to operate radio-telegraph facilities as a coastal station at Frankfort, and at that point it maintains 24-hour service, handling messages for the general public as well as for the railroad. As a carrier of air intelligence appellant is subject to the jurisdiction of the Federal Communications Commission and is required to submit periodic reports thereto.

From 1934 on appellant's radio-telegraph facilities have been housed in the railroad and car ferry terminal at Frankfort, Michigan, in the same room as the land-wire equipment of the railroad. This room adjoins the passenger waiting room of the railroad.

The three employees involved each work an eight-hour shift seven days a week, thus maintaining the twenty-four-hour service required under the radio-telegraph license. During the day shift the radio operator on duty is known as "Supervisor Radio," and he is responsible for the operation and maintenance of the radio-telegraph equipment. The District Court found that this employee works almost exclusively in the performance of radio-telegraph duties, while the employees on the second and third shifts work in the dual capacity of operating radio-telegraph facilities and at the same time handling land-wire messages for the railroad. "Supervisor Radio's" duties, in addition to actual operation of the radio, consist of distributing and billing all paid radio traffic; making minor repairs to Diesel automatic lighting plants of the car ferries, radio direction finders and Bendix fire alarm systems on board all ships; and handling passenger inquiries at the information window and over the telephone.

The other two operators, known as the "Morse-Radio Operators," have the same duties. Each during his shift is responsible for the operation of the radio-telegraph and the land-wire telegraph. In addition to transmitting and receiving messages, reports, train orders, and similar communications over the land-wire and radio-telegraph, these employees handle Western Union traffic after the closing hours of its local office, index inbound and outbound railroad cars, and perform such other duties as the agent-yardmaster may direct.

All of the employees are under the control and direction of railroad officials and are carried on the railroad's payroll and are paid with the railroad's checks. The amount paid to the "Supervisor Radio" is charged 100% against the account the railroad carries to take care of appellant's expenses. The two Morse-radio operators are paid in like manner, but only 50% of the amount they receive is charged against the appellant's account. The employees are subject to the provisions of the Carriers Taxing Act, 45 U.S.C. § 261 et seq., 45 U.S.C.A. § 261 et seq., are eligible to the privileges of the Railroad Retirement Act, 45 U.S.C. § 228a et seq., 45 U.S.C.A. § 228a et seq., have free transportation over the railroad, and are treated in every respect as railroad employees.

It is agreed that the employees do work which is within the coverage of the Fair Labor Standards Act, and that they have not been compensated in accordance with its requirements. It is agreed that if these men were employees of the railroad alone, they would be exempt from the coverage of the Act under § 13(b), which provides that the provisions of § 7 do not apply with respect to "any employee of an employer subject to the provisions of Part I of the Interstate Commerce Act." It is also agreed that, if the employees were employed by the appellant alone, they would fall within the coverage and be entitled to the benefits of the Fair Labor Standards Act.

Appellant in its reply brief before the District Court admitted that the radio operators are the employees of both the railroad and the appellant and this was in effect the finding of the District Court. The specific question presented is whether employees of joint employers are covered by the Act when one of the employers is exempt and the other is non-exempt.

The railroad's principal contention is that, since the entire work of these operators, both for the railroad and the appellant, with the exception of the messages sent for others which amount to less than two per cent of the total, is an integral part of its actual carrier and transportation work, a holding is required that these employees are exempt. However, this work is done by appellant which is not exempt. While the radio employees are technically employees of the railroad, in the performance of the work they are 100% employees of the appellant. The District Court found that one of the radio-telegraphers works almost exclusively for the appellant, and also concluded correctly that while almost 99% of the messages are sent by the railroad, with reference to its operation as a carrier, they are public messages sent under the Federal Communciation Commission's regulations. The employees of the radio station were found to be at the call of the public throughout the entire day, and this finding is supported by the record. While this work benefits the railroad principally, under the contract between appellant and the railroad, and under the law, appellant's radio facilities and service are required to be available to all who wish them.

The circumstance that the work performed in so large a proportion benefits the railroad as a customer of appellant we think is immaterial under the decision in Boutell v. Walling, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786. In that case, as here, there was an identity of ownership, the employees concerned being employees of the Boutell Service Company, a partnership, the owners of which were the sole stockholders of the F. J. Boutell Drive-Away Company, an interstate motor transportation company. The employees of the Service Company worked exclusively on repair and mechanical jobs for the Drive-Away Company. It was there contended that as the Drive-Away Company, an interstate transportation company, was concededly exempt from the Fair Labor Standards Act, § 13(b), the Service Company employees who worked exclusively for the benefit of the Drive-Away Company were likewise exempt; but the Supreme Court held that the separate corporate entities could not be disregarded, and that the employees of the non-exempt Service Company fell within the coverage of the Fair Labor Standards Act.

If the fact that the entire work performed benefited an exempt employer did not authorize an exemption in the Boutell case supra, the fact that a large proportion of

the work performed under the circumstances here presented benefits an exempt employer does not necessarily authorize the exemption.

Analogous questions arising in situations involving the combination of exempt and non-exempt activities have been decided counter to appellant's contention. Thus courts have held that, when an exempt employer engages in activities different from those exempted, under the statute the employees in the non-exempt department of his business are subject to the Act. Walling v. Connecticut Co., 2 Cir., 154 F.2d 552; Davis v. Goodman Lumber Co., 4 Cir., 133 F.2d 52. Where the exempt and non-exempt characteristics of the business are so intermingled as to be inseparable, the exemption is denied entirely. Guess v. Montague, 4 Cir., 140 F.2d 500. A similar situation is presented here, where the appellant's employees are available every minute of the day to the public. Even if the radio service performed for the railroad were not a public service, as held above, it is so intermingled with that performed for the general public as to be inseparable.

We think that the fact that most of the work performed is for the interest of the railroad is not controlling. The decisive consideration under the statute is that this work is done by employees of an employer, namely, the appellant, concededly not subject to the Interstate Commerce Act, 49 U. S.C.A. § 1 et seq. North Shore Corp. v. Barnett, 5 Cir., 143 F.2d 172.

 We bear in mind that the appellant is the railroad's wholly owned subsidiary, that the railroad defrays all expenses of the operation, carries the appellant's employees on its payroll, houses their operations in its railroad terminal, has these employees report to its own officials, and in all respects treats them as railroad employees. Under classifications established at common law, the direction and control of the work would usually have been determinative that the men were employed by the railroad rather than by the appellant. Cf. Linstead v. Chesapeake & Ohio R. Co., 276 U.S. 28, 34, 48 S.Ct. 241, 72 L.Ed. 453. However, the previously established legal tests of employment are no longer exclusively applicable. National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170.

 Moreover, to ignore the distinction between the corporate entities of the railroad and the appellant is to lose sight of the situation which necessitated the formation of this wholly owned subsidiary. The railroad was deprived of its license to perform radio operations by the Federal Radio Commission. In order to secure this necessary radio service it was compelled to and did legitimately create the appellant corporation. Only by the creation of this wholly-owned subsidiary could the railroad insure its control of essential radio operations, the complete and permanent accessibility of the service, and at the same time comply with the orders of the Federal Radio Commission. Since the device was deliberately adopted in order to secure these advantages for the railroad, the identity of corporate existence cannot now be ignored on behalf of the railroad. Cf. Boutell v. Walling, supra.

The judgment of the District Court is affirmed.