**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JERRY GIEG,

*Plaintiff-Appellee,*

v.

DRR, INC., an Oregon corporation, dba Courtesy Ford, and WOODY HOWARTH,

*Defendants-Appellants.*

No. 03-35619

D.C. No.
CV-98-01563-ALH

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, District Judge, Presiding

JOSEPH C. WICKERSHAM,

*Plaintiff-Appellee,*

v.

HASELWOOD BUICK-PONTIAC CO.,

*Defendant-Appellant.*

No. 03-35707

D.C. No.
CV-01-05557-FDB

Appeal from the United States District Court
for the Western District of Washington
Franklin D. Burgess, District Judge, Presiding

5337

MARTIN CHALOUPKA, LISA BENNETT,
BRADLEY HAYES, and JOHN
INSELMAN,
              *Plaintiffs-Appellees,*

          v.

SLT/TAG, INC., an Oregon
corporation, fka Thomason Auto
Group, Inc. and ASBURY
AUTOMOTIVE OREGON, LLC,
              *Defendants-Appellants.*

Nos. 03-36009
04-35121

D.C. Nos.
CV-02-00743-GMK
CV-02-01053-GMK
CV-02-00065-GMK

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
November 4, 2004—Portland, Oregon

Filed May 18, 2005

Before: Stephen S. Trott and Andrew J. Kleinfeld,
Circuit Judges, and Louis H. Pollak,* District Judge.

Opinion by Judge Pollak

---

*Honorable Louis H. Pollak, United States District Court Judge for the
Eastern District of Pennsylvania, sitting by designation.

## COUNSEL

Timothy R. Volpert, Davis Wright Tremaine, LLP, Portland, Oregon, for defendants-appellants DRR, Inc., et al. and SLT/ TAG, Inc., etc.

Jacqueline L. Koch, Koch & Deering, Portland, Oregon, for plaintiff-appellee Jerry Gieg.

Ford F. Newman, U.S. Department of Labor, Washington, D.C., for amicus curiae the Secretary of Labor.

Felicia R. Reid, Curiale Dellaverson Hirschfeld Kraemer & Sloan, LLP, San Francisco, California, for amici curiae the National Automobile Dealers Association; National Federation of Independent Business Legal Foundation; National Independent Automobile Dealers Association; Recreation Vehicle Dealers Association; and Marine Retailers Association of America in support of the defendants-appellants.

John R. Scannell, Action Employment Law, Seattle, Washington, for plaintiff-appellee Joseph C. Wickersham.

Patrick M. Madden, Seattle, Washington, for defendant-appellant Haselwood Buick-Pontiac Company.

Robert J. Bekken, Fisher & Phillips, LLP, Irvine, California, for defendant-appellant Haselwood Buick-Pontiac Company.

David F. Sugerman, Paul & Sugerman, PC, Portland, Oregon, for plaintiffs-appellees Martin Chaloupka, et al.

Christopher P. Koback, Davis Wright Tremaine, LLP, Portland, Oregon, for defendants-appellants DRR, Inc., et al. and SLT/TAG, Inc., etc.

---

**OPINION**

POLLAK, District Judge:

In these three appeals — *Gieg v. DRR, Inc.*, *Wickersham v. Haselwood Buick-Pontiac Co*., and *Chaloupka v. SLT/TAG, Inc*. — arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., the principal question we are asked to determine is whether finance and insurance managers of retail automobile dealerships, who are compensated almost exclusively by commission, are entitled to overtime pay for hours worked beyond the standard 40-hour workweek pursuant to section 7(a) of the FLSA, 29 U.S.C. § 207(a). Section 207(a) provides that, with certain exceptions, employers in interstate commerce must pay employees overtime of at least one and one-half times their regular rate of pay for any time worked in excess of 40 hours a week.[1] Section § 207(i), however, exempts employers from paying overtime to "any employee of a retail or service establishment" if the employee's regular rate of pay is more than one and one-half times the statutorily prescribed minimum wage and if "more than

---

[1] 29 U.S.C. § 207(a)(1) Maximum hours, employees engaged in interstate commerce:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

half his compensation for a representative period (not less than one month) represents commissions on goods or services."[2] The three appeals — two from the District Court of Oregon, and one from the District Court of Washington — raise largely identical issues and arguments, and hence were consolidated for oral argument.

In each case, the District Court, while recognizing that an automobile dealership is a "retail or service establishment," concluded that a finance and insurance manager, who handles financing and insurance aspects of the sale of an automobile, is not engaged in the dealership's retail activity and hence is not an employee for whom the employer can claim exempt status. Accordingly, in all three instances, the District Court granted summary judgment for the plaintiff employees, awarding overtime payments. Each dealership has appealed.[3] We reverse.

## BACKGROUND

The facts of each case are essentially undisputed. Appellants are retail automobile dealerships that sell or lease new

---

[2]29 U.S.C. § 207(i) Employment by retail or service establishment:

No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

[3]The appeals in *Gieg* and *Wickersham* are supported by amici briefs from the Secretary of Labor and the National Automobile Dealers Association. The National Federation of Independent Business Legal Foundation, the National Independent Automobile Dealers Association, Recreation Vehicle Dealers Association, and the Marine Retailers Association of America joined the latter brief.

and used vehicles to their customers. Appellees were each employed by appellants as finance and insurance managers.[4] Their duties in this capacity included verifying information about the terms of the transactions agreed upon between the customer and the sales staff and inputting that information into a computer; completing the necessary bank and Department of Motor Vehicles ("DMV") forms; and obtaining the customer's signature on the paperwork. Appellees sold insurance policies to facilitate continuing payment for the vehicle in case of illness, disability, or death. They also sold extended warranties, alarm systems, and paint and fabric protection packages to dealership customers. Appellees were compensated almost exclusively through commissions on the products they sold. None of the appellees earned any commission from the sale or lease of the vehicle itself. The factual and procedural history of *Gieg* is set out in the text below. For the relevant histories of the companion cases, *Wickersham* and *Chaloupka,* see *infra* notes 8 and 9.

(A)  *Gieg*

Between June 10, 1998 and September 23, 1998, appellee Jerry Gieg was employed by Courtesy Ford as a "Finance Writer." During the three and a half months he worked for Courtesy Ford, Gieg earned $24,025.16 in commissions. On an hourly basis, his compensation each month markedly exceeded one and one-half times the prescribed minimum wage.

This is the second time Gieg's claim has been before this Court. On December 15, 1998, Gieg filed this FLSA action against Courtesy Ford and its manager, Woody Howarth, in the District Court for the District of Oregon seeking overtime

---

[4]Gieg's official title was "Finance Writer." Wickersham's title was "Finance Manager." Each of the *Chaloupka* appellees was a "Finance and Insurance Manager." Despite differing titles, all appellees in the three cases had similar job descriptions and duties.

wages under § 207(a). The District Court granted partial summary judgment in favor of defendants on the ground that Gieg's claim was barred by § 213(b)(10)(A), which excludes from overtime eligibility "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a non-manufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers."[5] On appeal, this Court reversed on the ground that an employee whose primary duties were selling financing and warranties did not qualify as a vehicle "salesman" within the § 213(b)(10)(A) exemption[6] and remanded the case for further proceedings. *Gieg v. Howarth*, 244 F.3d 775 (9th Cir. 2001).

On remand, Courtesy Ford and Howarth moved for summary judgment under § 207(i), claiming that the dealership was exempt from the Act's overtime provisions because: (1) Gieg was an employee of a retail automobile dealer; (2) his regular rate of pay exceeded 150% of the federal minimum wage in 1998; and (3) more than half of his compensation

---

[5]This exception is independent of § 207(i) and does not depend on whether the salesmen, partsmen, or mechanics are compensated on a commission basis.

[6]This Court held, "By its terms, the exemption plainly applies only to the sales and servicing of automobiles; the language does not apply to commissions based on insurance sales or the procurement of financing." *Gieg v. Howarth*, 244 F.3d 775, 776 (9th Cir. 2001). This conclusion was based, in large part, on the fact that prior to the adoption of the present language in 1966, the Act exempted "*any employee* of a retail or service establishment which is primarily engaged in the business of selling automobiles, trucks, or farm implements" from both minimum wage and overtime requirements. 29 U.S.C. § 213(a)(19) (1964) (emphasis added). The 1966 amendments repealed the inclusive phrase "any employee" and replaced it with the current language which restricts the exemption to "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles. . . ." Pub. L. No. 89-601, §§ 209(b), 212(a) (1966). Thus, this Court held, "we must presume that in the passage of the 1966 amendments, Congress intended to narrow significantly the reach of the automobile dealership employee exemption." *Gieg,* at 776-77 (9th Cir. 2001).

represented commissions from the sale of goods and services. Gieg filed a cross-motion for summary judgment, claiming § 207(i) does not apply to the dealership's finance employees.

On February 14, 2003, the District Court entered an opinion and order granting Gieg's cross-motion for summary judgment with respect to his FLSA overtime claim. The District Court concluded that "invoking the Section 207(i) exemption requires a clear showing that more than half of an employee's compensation represents commissions on *retail* goods and services, and not *all* goods and services as long as they are sold by a retail or service establishment." *Gieg v. DRR, Inc.*, No. 98-1563, 2003 WL 21087602 at *4 (D. Or. March 14, 2003) (emphasis in original). In reaching this conclusion, the court observed that FLSA exemptions are to be narrowly construed. Citing *Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290 (1959), the District Court also noted, "the Supreme Court has held that finance companies, insurance brokerages and claim adjusters all lack a retail 'concept.' . . . Since the duties of such [finance] employees fall outside the scope of the employers' retail or service business, those employees therefore also fall outside of any FLSA exemption that is based upon the employers being a retail or service establishment. " *Gieg*, 2003 WL 21087602, at *5.

On March 17, 2003, the Department of Labor ("DOL") issued an opinion letter concluding that § 207(i) excludes finance and insurance salespersons employed by a retail automotive dealership from FLSA overtime eligibility.[7] The opinion letter concluded that "employee duties are irrelevant" if other requirements of the exemption are met. On March 21, 2003, Courtesy Ford and Howarth filed a motion for reconsideration in light of the DOL opinion letter. The District Court denied the motion and entered an order finding Courtesy Ford and Howarth liable to Gieg for overtime wages.

---

[7]The Secretary of Labor's amicus brief submitted in *Gieg* and *Wickersham* further elaborates the Department's position.

Footnotes 8 and 9 summarize the quite similar facts and the pertinent procedural histories of *Wickersham*[8] and

[8]Appellee Joseph Wickersham was employed by Haselwood Buick-Pontiac Company as a "Finance Manager" from September 29, 2000 through September 21, 2001. During that time, he earned $94,915.57. Ninety-nine percent of Wickersham's compensation was based on commissions from the contracts he sold. It is undisputed that Wickersham's compensation each month exceeded the overtime rate required by 207(i). Furthermore, the District Court held that, as an automobile dealership, Haselwood qualifies as a "retail or service establishment."

Wickersham filed suit against Haselwood in the District Court for the District of Washington in October 2001, bringing overtime and minimum wage claims under both the FLSA and Washington state law. The parties filed cross-motions for summary judgment. On August 16, 2002, the District Court issued an order in which it granted Wickersham's motion for summary judgment as to the overtime claim, granted Haselwood's motion for summary judgment as to the federal minimum wage claim, and dismissed Wickersham's state law claims.

With respect to the overtime claim, the court agreed that Haselwood was a "retail or service establishment," but concluded that § 207(i) did not apply because Wickersham "was not employed in the activities within the scope of Defendant's business." *Wickersham v. Haselwood Buick-Pontiac Co.*, No. 01-5557, 2002 WL 32152269 at *5 (W.D. Wash. August 16, 2002) (*citing* 29 C.F.R. § 779.308 and *Davis v. Goodman Lumber Co.*, 133 F. 2d 52 (4th Cir. 1943)). The District Court further reasoned, "The term 'retail or service establishment' does not encompass establishments in industries lacking a retail concept. 29 C.F.R. § 779.316. Among those businesses that lack a retail concept are credit companies, insurance companies, including insurance brokerage, agents and claims adjustment offices, and finance companies." *Id.* at *5 (*citing Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290 (1959)). The court found, "As part of his duties Plaintiff would try to persuade the customer to obtain financing through either the vehicle manufacturer's financing arm or some commercial financing institution with which Defendant had a relationship. Plaintiff was also responsible for selling insurance polices and insurance products to the customer. . . . Such activities are more akin to a finance writer or an insurance agent than they are to an automobile salesman. Thus, Plaintiff's job duties lacked a retail concept." *Id.*

Haselwood subsequently filed a "motion for revision" in light of the March 17, 2003 DOL opinion letter, which the District Court denied. Haselwood now appeals the summary judgment order.

of *Chaloupka*.[9]

---

[9]The appellees in *Chaloupka* are four plaintiffs who brought consolidated claims for overtime wages against SLT/TAG, Inc. and Asbury Automotive Oregon LLC. Asbury Automotive Oregon LLC owns automobile dealerships in the Portland area formerly owned by the Thomason Auto Group. At various times, each appellee was employed by a Thomason dealership as a "Finance and Insurance Manager." Appellees were compensated exclusively on a commission basis. In 2000, Lisa Bennett earned more than $92,000, John Inselman earned $58,000, and Bradley Hayes earned almost $70,000. On an hourly basis, their compensation each month exceeded the overtime rate required by 207(i).

The claims of these four appellees were consolidated in the district court over time. On January 14, 2002, a state-court action filed by Bennett seeking overtime wages under both FLSA and state law was removed to the District Court for the District of Oregon. On June 6, 2002, a state-court action filed by Martin Chaloupka and Inselman, asserting overtime claims essentially identical with those asserted by Bennett, was removed to the District Court for the District of Oregon. On August 5, 2002, Hayes filed suit in the District Court for the District of Oregon asserting similar claims.

In Bennett's suit, the dealership moved for summary judgment under § 207(i) claiming that it was exempt from the Act's overtime provisions. Bennett filed a cross-motion for partial summary judgment. On February 10, 2003, a Magistrate Judge issued findings and a recommendation that defendant's motion should be denied and Bennett's motion should be granted. The Magistrate Judge interpreted § 207(i) as limited to employees earning commissions on *retail* goods and services. In reaching this conclusion, the Magistrate Judge explained, "While defendants' interpretation is not without some logic, I am mindful of the admonition that exemptions from the FLSA overtime requirement are to be narrowly construed and their application limited to those plainly and unmistakably within their terms and spirit."

On March 17, 2003, the DOL issued its opinion letter concluding that § 207(i) exempts finance and insurance salespersons employed by a retail automotive dealership from the FLSA's overtime requirements. Finding the opinion letter "not persuasive," the District Court adopted the Magistrate Judge's findings and recommendations.

The Magistrate Judge presiding over Bennett's case consolidated Chaloupka and Inselman's case with Hayes' case for the purpose of summary judgment. The parties in these consolidated cases then filed cross-motions for summary judgment. On May 20, 2003, the Magistrate Judge issued findings and recommendations that the dealerships' motions should be

## STANDARD OF REVIEW

Interpretations of the FLSA and its regulations are questions of law, and appellate courts review district court interpretations de novo. *See, e.g.*, *Magana v. Commonwealth of the Northern Mariana Islands*, 107 F.3d 1436, 1438 (9th Cir. 1997) ("We review de novo district court decisions regarding exemptions to the Fair Labor Standards Act"). We also review a district court's grant or denial of summary judgment de novo. *United States v. Alameda Gateway, Ltd.*, 213 F.3d 1161, 1164 (9th Cir. 2000). Viewing the evidence in the light most favorable to the nonmoving party, an appellate court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

## DISCUSSION

**[1]** The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., was passed to regulate the wage, hour, and working conditions of American employees. The Act provides, *inter alia,* that, as a general matter, employers must pay employees overtime of at least one and one-half times their

---

denied and the employees' motions should be granted. The District Court subsequently adopted these findings and recommendations.

On September 10, 2003, the three cases were consolidated for a trial on damages. Following trial, the District Court entered findings and conclusions determining that Bennett, Inselman, and Hayes were entitled to overtime wages and state-law penalties, but not liquidated damages. On November 6, 2003, the District Court entered judgment in favor of plaintiffs. (The court found that the dealerships' violation of the FLSA was not willful and, therefore, the two-year statute of limitations applied. Since Chaloupka had no overtime within that period, the court awarded him no damages). On November 18, 2003, the court entered an amended judgment awarding Bennett, Inselman, and Hayes monetary damages and attorneys fees. The dealerships now appeal.

regular rate of pay for any hours worked in excess of 40 hours a week. 29 U.S.C. § 207(a)(1).

**[2]** Certain employees, however, are not covered by the overtime provisions. Employers have the burden of demonstrating that a particular employee, or category of employees, is not within the ambit of the overtime provision. *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983) (per curiam). Exemptions from the Act are to be "narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress." *Id.* Section 207(i) excludes from coverage an employee of "a retail or service establishment" whose regular rate of pay is more than one and one-half times the minimum wage if "more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." The legislative purpose of the § 207(i) exemption is discussed in 29 C.F.R. § 779.414, which states:

> Section 7(i) was enacted to relieve an employer from the obligation of paying overtime compensation to certain employees of a retail or service establishment paid wholly or in greater part on the basis of commissions. These employees are generally employed in so-called "big ticket" departments and those establishments or parts of establishments where commission methods of payment traditionally have been used, typically those dealing in furniture, bedding and home furnishings, floor covering, draperies, major appliances, musical instruments, radios and television, men's clothing, women's ready to wear, shoes, corsets, home insulation, and various home custom orders. There may be other segments in retailing where the proportionate amount of commission payments would be great enough for employees employed in such segments to come within the exemption. Each such situation will be examined, where exemption is claimed, to make certain the

employees treated as exempt from overtime compensation under section 7(i) are properly within the statutory exclusion.

The policy justification for the exemption thus appears to have more to do with the employee's compensation than with the exact nature of the goods or services sold. The regulation exempts employers who employ well-compensated employees earning commissions in "big ticket" departments from paying overtime. Appellants and amici argue that selling "big ticket" items, such as automobiles, does not lend itself to being compensated on an hourly basis. As the National Automobile Dealers Association ("NADA") states in its amicus brief filed in support of appellants in *Gieg* and *Wickersham*, "Unlike most other workplaces, where the workload is relatively predictable and lends itself to shift work and overtime, the work at 'big ticket' item dealerships is driven by the vagaries of consumer demand and is inherently unpredictable." *See Mechmet,* 825 F.2d at 1176-77 (explaining why the policies behind the FLSA overtime provisions would not be served by applying them to commissioned employees selling "big ticket" items).

[3] In the cases at bar, in order to qualify for the § 207(i) exemption, the employers were required to show that: (1) each employer was "a retail or service establishment"; (2) each plaintiff-employee's regular rate of pay was more than one and one-half times the minimum wage;[10] and (3) more

---

[10]The appellees in *Chaloupka* argue that the dealerships have not provided sufficient proof that their regular rate of pay was more than one and one-half times the minimum wage. In particular, the appellees contend that the evidence that their compensation exceeded one and one-half times the minimum wage is based only on an average and does not establish that such pay was provided for every week of work. The term "regular rate of pay" is defined in 29 C.F.R. § 779.419(b) as "the hourly rate actually paid to the employee for the normal, nonovertime workweek for which he is employed." Appellees argue that the FLSA does not allow averaging and that each week must stand alone.

than half of plaintiffs' compensation "represent[ed] commissions on the sale of goods or services." 29 U.S.C. § 207(i). The key dispute in these appeals regards whether, with respect to the third element, the § 207(i) exemption is limited to employees who earn commissions on *retail* goods or services, as the District Courts held, or whether it is meant to apply to *all* commission-earning employees of a retail or service establishment who meet the compensation requirements. However, both *Gieg* and *Chaloupka* raise preliminary issues bearing on whether the dealerships in those cases qualify as "retail or service establishment[s]." We will address these preliminary

In their submissions to the District Court, the *Chaloupka* dealerships provided information on each appellee's hourly rate. The appellees do not challenge those figures. Instead, they argue that the figures should have been "hourly wage" and not "regular hourly rate." In their response to Defendants' Consolidated Concise Statement of Material Facts, which listed Chaloupka and Inselman's "regular rate of pay" over the relevant time period, appellees wrote, "Accept; except that 'regular rate' or 'regular hourly rate' should read 'hourly wage' as stated in appellees' respective complaints." Appellees rely on this response to support the proposition that they did not stipulate to the regular hourly rate, but "only as to an hourly wage, averaged over an unidentified time period." Even though appellees used the same calculations in their complaints, they now argue that the calculation does not satisfy the proof required to show that they were paid the required wage.

Appellees did not make this argument in the District Court, which treated the issue as undisputed. An appellate court will not consider arguments not first raised before the district court unless there are exceptional circumstances. *In re Prof'l Inv. Props. of Am.,* 955 F.2d 623, 625 (9th Cir. 1992). The Magistrate Judge presiding over Bennett's case stated, "It is undisputed that plaintiff's 'regular rate of pay' substantially exceeded one and one-half times the minimum wage, thereby satisfying the first condition in Section 7(i) for establishing the applicability of the exemption." *Bennett v. SLT/TAG Inc. et al.,* No. CV02-65-HU (Feb. 10, 2003) p. 13, n.3. The District Court adopted these findings and recommendations. None of the other *Chaloupka* plaintiffs raised this issue prior to appeal. Because there are no exceptional circumstances to justify appellees' attempt to raise the argument for the first time on appeal, we regard the argument as waived.

issues in Sections A and B of this opinion before turning to the central dispute in Section C.

## A.  Did Courtesy Ford qualify as a "retail or service establishment" under § 207(i)?

Gieg contends that Courtesy Ford has not shown that it qualified as a "retail or service establishment" within the meaning of § 207(i). The § 207(i) definition of "retail or service establishment" derives from former 29 U.S.C. § 213(a)(2). Prior to being repealed in November 1989, § 213(a)(2) excluded from minimum wage and overtime pay:

> [A]ny employee employed by any retail or service establishment . . . if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, and such establishment is not in an enterprise described in section 203(s)(5) of this title. A "retail or service establishment" shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry.

When Congress enacted section 207(i) in 1966, it intended the term "retail or service establishment" to have the same meaning. 29 C.F.R. § 779.411. Although § 213(a)(2) was later repealed, courts have continued to apply its definition of "retail or service establishment" to Section 207(i). *See, e.g.*, *Reich v. Delicorp, Inc.*, 3 F.3d 1181, 1183 (8th Cir. 1993).

**[4]** Gieg argues that Courtesy Ford has not proved that it met the 75% volume requirement to qualify as a "retail or service establishment," and that Courtesy Ford is unable to do so because the FLSA does not recognize the majority of Gieg's sales as "retail" within the industry. While it is true that automobile finance and insurance sales are considered non-retail

for the purpose of the FLSA, *see Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290 (1959)*,* that fact is of no consequence here. First, for the purpose of determining whether, during Gieg's period of employment, Courtesy Ford was a "retail or service establishment," the relevant inquiry is not whether the particular transactions on which Gieg worked should be deemed to be retail, but whether Courtesy Ford's sales of automobiles should be deemed to be retail. The inquiry focuses on the retail sales of an "establishment" as a whole and not on the individual activity of a particular employee. It is uncontested that automobile sales are recognized as retail sales by the industry and by the FLSA. Second, Courtesy Ford excluded its finance and insurance sales when calculating the 75% annual dollar volume figures. Excluding all proceeds from finance and insurance sales, the dealership met the 75% volume sales threshold to qualify as a retail establishment.

## B.   Did the dealerships in *Chaloupka* qualify as "retail or service establishments" under § 207(i)?

### (1)   *Are individual automobile leases "sales" that are not "for resale"?*

A significant portion of the transactions completed by the dealerships in *Chaloupka* involved arranging long-term automobile leases for individual dealership customers. These individual leases typically ranged from 24 to 66 months, during which time the lessee agreed to insure and maintain the vehicle and not to resell or otherwise dispose of it. The appellees in *Chaloupka* contend that the dealerships have not proved that they meet the 75% volume requirement to qualify as "retail or service establishment[s]" because these leases either (1) did not constitute "sales"[11] or (2) must be disregarded as sales

---

[11]The term "sale" is defined in 29 U.S.C. § 203(k) to include "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." The dealerships argue that this definition should be read to include leases of automobiles to individual customers as "other disposition[s]."

"for resale."[12] The dealerships have admitted that they cannot meet the 75 percent volume threshold unless the dollar volume earned from leases is included in the calculation.

The Fifth Circuit has addressed both parts of this inquiry. In *Acme Car & Truck Rentals, Inc. v. Hooper*, 331 F.2d 442 (5th Cir. 1964), that court considered whether a company that rented and leased automobiles and trucks to commercial, industrial, and individual users qualified as a "retail or service establishment" that was exempt from paying employees overtime under former § 213(a)(2). In particular, the court examined whether "fleet leasing," which represented a significant portion of the defendant's business, constituted a "retail sale" for the purpose of the exemption. *Id.* at 446-48. The court held that because the defendant failed to establish that fleet leasing was retail in nature, those proceeds could not be counted toward the 75% threshold. *Id.* at 447-48. In reaching that determination, however, the Fifth Circuit stated, "It is unquestionable that fleet leasing is a sale or service which is not for resale. But due to the wholesale nature of that transaction, it is questionable whether it is recognized as retail in the industry." *Id.* at 446. Here, where we are dealing not with "fleet leasing," a form of "wholesale . . . transaction," but with individual leases, there is no dispute that the leases are retail; the only question is whether leases constitute "sales" that are not "for resale." *Acme* addressed the latter question directly — "leasing is a sale or service which is not for resale." *Id.* We agree. The *Acme* statement is consistent with rulings that a real estate lease is a "sale" within the meaning of the Act. *See Brennan v. Dillion*, 483 F.2d 1334 (10th Cir. 1973) (rental of apartment space is a "sale" or "disposition" as defined by § 203(k), the definitional section quoted in foot-

---

[12]As noted *supra* pp. 5353, former § 213(a)(2), whose definition remains controlling, defines the term "retail or service establishment" as meaning an establishment "75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry."

note 13, *supra*); *Wirtz v. First Nat'l. Bank & Trust Co.*, 365 F.2d 641, 645 (10th Cir. 1966) (rental of office space falls within § 203(k) definition of "sale"). Furthermore, while the Act does not define the term "resale," we agree with appellants that the distinguishing characteristic of a "sale for resale" is that the sale is made for the purpose of immediate resale. The Department of Labor's regulations support this interpretation. As 29 C.F.R. § 779.331 explains:

> A sale is made for resale where the seller knows or has reasonable cause to believe that the goods or services will be resold, whether in their original form, or in an altered form, or as a part, component or ingredient of another article. . . . Similarly, if at the time the sale is made, the seller has no knowledge or reasonable cause to believe that the goods are *purchased for the purpose of resale*, the fact that the goods later are actually resold is not controlling.[13]

(Emphasis added).

**[5]** An automobile lease is not a sale *for the purpose of resale* as contemplated by the FLSA. The customer who signs a retail automobile lease is the intended consumer of that vehicle. Neither the dealer nor the customer enters into a lease with the expectation that the vehicle or its parts will be promptly resold. We therefore conclude that individual automobile leases are "sales" that are not "for resale" and that the

---

[13]The additional guidance regarding "sales for resale" provided in subsequent C.F.R. provisions is instructive. Section 779.332, for example, points to sales of parts expected to be incorporated into aircraft that will later be sold, the sale of lumber to furniture or box factories, or the sale of textiles to clothing manufacturers as sales for resale. Section 779.333 explains, "Goods are sold for resale where they are sold for use as a raw material in the production of a specific product to be sold, such as sales of coal for the production of coke, coal gas, or electricity, or sales of liquefied-petroleum-gas for the production of chemicals or synthetic rubber."

proceeds from these leases may be counted toward the dealerships' annual dollar volume in order to qualify as "retail or service establishments" under § 207(i).

**C. Is the § 207(i) exemption limited to employees earning commissions on *retail* goods or services or does it apply more broadly to *all* employees earning commissions on goods and services?**

While recognizing that an automobile dealership is a "retail or service establishment" under the FLSA, the District Courts in the cases under review concluded that a finance and insurance manager, who handles finance and insurance aspects of the sale of an automobile, is not engaged in the dealership's retail activity and hence is not an employee for whom the employer can claim exempt status. Appellants contend that as long as the goods and services are sold by a "retail or service establishment," the § 207(i) exemption applies to each commission-earning employee regardless of whether the commissions earned derive from retail goods and services. In support of their position, appellants rely on the wording of § 207(i), which contains no language confining the statutory exemption to commission-earning employees who themselves sell retail goods and services, and on the Department of Labor opinion letter and brief adopting this position.

(1) *The Wording of § 207(i)*

**[6]** Section 207(i) provides:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him . . . , and (2) more than half his compensation for a representa-

tive period (not less than one month) represents commissions on goods or services. 29 U.S.C. § 207(i).

By its terms, the § 207(i) exemption applies to "any employee" of a retail or service establishment who meets the compensation requirements; the exemption is not limited to those employees who sell retail goods and services.

### (2)  *Interpretive Regulations*

**[7]** Invoking 29 C.F.R. § 779.308, appellees argue that they do not come within the § 207(i) exception because they are not employed in activities that are within the scope of the dealerships' exempt retail business. Section 779.308 states:

> In order to meet the requirement of actual employment "by" the establishment, an employee, whether performing his duties inside or outside the establishment, must be employed by his employer in the work of the exempt establishment itself in activities within the scope of its exempt business. (See *Davis v. Goodman Lumber Co*., 133 F. 2d 52 (CA-4) (holding section 13(a)(2) exemption inapplicable to employees working in manufacturing phase of employer's retail establishment); *Wessling v. Carroll Gas Co*., 266 F. Supp. 795 (N.D. Iowa); *Oliveira v. Basteiro*, 18 WH Cases 668 (S.D. Texas). See also, *Northwest Airlines v. Jackson*, 185 F. 2d 74 (CA-8); *Walling v. Connecticut Co*., 154 F. 2d 522 (CA-2) certiorari denied, 329 U.S. 667;[14] and *Wabash Radio Corp. v. Walling*, 162 F. 2d 391 (CA-6)).

The parties dispute both the applicability and the meaning of § 779.308. Appellants contend that § 779.308 is without application to § 207(i); but they also contend that, if

---

[14]The citation for *Walling v. Connecticut Co*. provided in the text of § 779.308 is inaccurate. The correct citation is 154 F.2d 552.

§ 779.308 is deemed applicable, appellees are employees engaged "in the work of the exempt establishment itself in activities within the scope of its exempt business."

In support of the contention that § 779.308 does not apply to § 207(i), appellants point out that (1) § 779.308 is a regulation crafted as a construction of 29 U.S.C. § 213(a)(2), which has since been repealed, and (2) the regulations that expressly relate to § 207(i) are 29 C.F.R. §§ 779.411 – 779.421, which are grouped together under the caption "Employees Compensated Principally by Commissions." *See* 29 C.F.R. § 779.410. ("There are briefly set forth in §§ 779.411 to 779.421 some guiding principles for determining whether an employee's employment and compensation meet the conditions set forth in section 7(i) [§ 207(i)]"). But the crucial words of § 207(i) — "any employee of a retail or service establishment" — mirror so closely the cognate words of former § 213(a)(2), which (subject to certain limitations not pertinent here) excluded from coverage "any employee employed by any retail or service establishment . . . ," that we think it would be captious to disregard § 779.308 in construing § 207(i). Moreover, we note that the Department of Labor's opinion letter of March 17, 2003, and the Secretary of Labor's amicus brief, concur in this view. Accordingly, we think it appropriate to consider the cases cited in § 779.308 — *Davis v. Goodman Lumber Co.*; *Northwest Airlines v. Jackson*; *Wabash Radio Corp. v. Walling*; *Wessling v. Carroll Gas Co.*; *Oliveira v. Basteiro*; and *Walling v. Connecticut Co.* — with a view to assessing their pertinence to the scenarios presented in the cases at bar.

In each of the cases cited in § 779.308, it was held that the employee or employees in question were not "employed . . . in the work of the exempt establishment itself in activities within the scope of its exempt business" and hence were not excluded from FLSA coverage. Each of the cited cases is, however, markedly unlike the three cases at bar. Each of the cited cases involved an employer engaged in a business endeavor that was *truly* separate from, and not at all related

to, the exempt business of the establishment. For example, *Davis v. Goodman Lumber Co.* involved the applicability of the § 213(a)(2) exemption to employees of a company that was primarily engaged in the retail sale of lumber, but which also had a separate department that manufactured rollers for cotton mills. The court held that because manufacturing rollers for cotton mills was "separate and distinct" from the company's retail lumber yard, the retail and service exemption did not apply to the employees of the manufacturing business. 133 F.2d at 54. *Northwest Airlines v. Jackson* addressed whether a group of Northwest employees working as part of a government airplane modification project during World War II, and located in a separate "modification center," were exempt from FLSA overtime payments under § 213(b)(3).[15] In denying the exemption, the court found the work done in the modification center was "so tenuous, negligible, and remote to defendant's operation of its commercial airline activities," that the exemption did not apply. 185 F.2d at 77. In *Wabash Radio Corp. v. Walling*, the court held that a railroad company that also operated a separate radio-telegraph facility, which served the public as a whole, could not exempt the radio employees from overtime under section 213(b)(2)'s exemption for "any employee of an employer subject to the provisions of Part I of the Interstate Commerce Act."[16] 162 F.2d 393. In *Wessling v. Carroll Gas Co.* the court held that a retail propane company that used two back rooms as a warehouse to store and distribute gas appliances to other affiliate companies consisted of two separate establishments, "one of which is exempt and one of which is not exempt." 266 F. Supp. at 798. Therefore, a plaintiff employed as 'cylinder driver' who delivered propane bottles, bulk gas, and appli-

---

[15]29 U.S.C. § 213(b)(3) excepts from overtime pay requirements "any employee of a carrier by air subject to the provisions of title II of the Railway Labor Act. . . ."

[16]The current language of 29 U.S.C. § 213(b)(2) excepts "any employee of an employer engaged in the operation of a rail carrier subject to part A of subtitle IV of Title 49 [rail provisions for interstate transportation]."

ances in connection with the warehouse operations was not "employed by" the exempt retail establishment, and hence was not excluded from overtime coverage under § 213(a)(2). *Id.* at 800-801. In *Oliveira v. Basteiro*, the court held that an ambulance service operated by a funeral home was a separate entity that was not exempt as a retail establishment under the Act. 18 WH Cases at 669. Therefore, an "ambulance helper" employed by the funeral home was covered by the Act's overtime provisions. *Id*. Finally, in *Walling v. Connecticut Co.*, the court held that a defendant who operated both electric trolley cars and a separate power plant could not exempt the power plant employees from the FLSA overtime provisions under the exemption for local trolley or motor bus carriers. 154 F.2d at 553. In rejecting defendant's literal interpretation of § 213(a)(9) as exempting "any employee" of a carrier, the court explained that the interpretation the defendant advanced "would mean that, no matter in what business, however extraneous to its functioning as a 'local trolley carrier,' defendant engaged, those employed in that extraneous business would be exempt." *Id.*

**[8]** It is not simply that the employers in the cases cited in § 779.308 contained distinct departments — the departments were engaged in truly separate business endeavors that were wholly "extraneous" to the work targeted by the relevant exemption. In contrast, the appellant dealerships now before the court are single retail or service establishments. As the Secretary of Labor aptly puts it in her amicus brief, unlike the facts in *Davis*, none of the "dealership[s] here maintained on its premises separate and distinct business operations in which the employees in question were engaged. . . . These dealerships do not operate a finance company, insurance company, or any other separate business. Rather, the duties performed by the finance officers were an integral, and integrated, part of their employer's auto dealership operations as a whole."

Appellees make the further argument that finance employees are not employed "in activities within the scope of its

exempt business" under § 779.308 because finance lacks a retail concept. In *Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290 (1959), the Supreme Court held that a personal loan company and "other financial institutions" including banks, insurance companies, and credit companies were not "retail or service establishments" within the meaning of former § 213(a)(2) because "there is no concept of retail selling or servicing in these industries." *Id.* at 295 (*citing* H.R. Conf. Rep., 95 Cong. Rec. 14932, U.S. Code Cong. Service 1949, p. 2265). In the cases at bar, the District Courts relied on *Mitchell* in concluding that the 207(i) exception only applies to retail employees who earn commissions on retail goods and services. *See also*, 29 C.F.R. § 779.317 (listing finance companies and insurance agencies as establishments that lack a "retail concept").

*Mitchell* is inapposite. As we have noted, in *Mitchell* the Court was addressing the question of whether the employer and "other financial institutions" were "retail or service establishments." In contrast, the District Courts have found the defendant employers — the several automobile dealerships — to be retail establishments, and we have concurred in those findings. Thus, the remaining question presented here is *not* the *Mitchell* question. The remaining question is whether commission-compensated employees of a retail establishment whose commissions derive from the financing and insurance aspects of retail sales are for that reason to be regarded as outside the scope of the retail enterprise and hence entitled to overtime payments.[17]

---

[17]Appellees cite 29 C.F.R. § 779.321(a) for the proposition that the concept of retailability must apply to particular transactions as well as to the establishment as a whole. ("As to each particular sale of goods or services, an initial question that must be answered is whether the sales of goods or services of the particular type involved can ever be recognized as retail.") This regulatory provision, however, simply addresses the question of which sales can be applied to the 75% annual volume sales threshold to determine which establishments meet the "retail or service establishment definition" originally set forth in former § 213(a)(2). Section § 779.321(a) is irrelevant to our present inquiry for the same reason that *Mitchell* is: the

Finally, in support of their contention that the finance/insurance aspects of their work take them outside the comprehensive wording of § 207(i) — "any employee of a retail or service establishment" — appellees invoke 29 C.F.R. § 779.369. Section 779.369 excluded burial insurance employees of funeral homes from the former § 213(a)(2) exemption on the ground that they produced "non-retail" income and were, therefore, not employed in the scope of the exempt establishment under § 779.308.[18]

Section 779.369 provides, in pertinent part:

(a) General. A funeral home establishment may qualify as an exempt retail or service establishment under section [§ 213(a)(2)] of the Act if it meets all the requirements of that section. Where the establish-

---

relevant question is not whether finance and insurance sales can be counted as retail sales for the purpose of determining whether a business qualifies as a "retail or service establishment," but whether employees selling insurance and other financing for a recognized retail establishment are included in the § 207(i) exemption.

[18]Section 779.369 comes under the heading "Classification of Sales and Establishments in Certain Industries." As 29 C.F.R. § 779.353 explains:

The general principles governing the application of the [§ 213(a)(2)] and [§ 213(a)(4)] exemptions are explained in detail earlier in this the subpart. It is the purpose of the following sections to show how these principles apply to establishments in certain specific industries. In these industries, the Divisions have made special studies, held hearings or consulted with representatives of industry and labor, to ascertain the facts. Based upon these facts, the following determinations have been made as to which sales or establishments are, and which are not, recognized as retail in the particular industry.

In this light, § 779.369 may be seen as a specific case study of how the former § 213(a)(2) exemption applied to funeral homes. In its opinion letter and brief, the Department of Labor opines that § 779.308 applies to § 207(i), but is silent as to § 779.369. We are prepared to accept that, like § 779.308, § 779.369 survives the repeal of § 213(a)(2).

ment meets these requirements generally all employ-
ees employed by the establishment will be exempt
except any employees who perform any work in con-
nection with burial insurance operations (see para-
graph (b)). . . .

(b) Burial insurance operations. There is no retail
concept applicable to the insurance business (see
§ 779.317). Burial associations which enter into
burial insurance contracts are generally regulated by
the State and the regulations governing such associa-
tions are included in State statutes under Insurance.
The contracts issued are very similar in form and
content to ordinary life insurance policies. Income
received from such operations is non-retail income
and employees engaged in such work are not
employed in work within the scope of the retail
exemption (see § 779.308).

Appellees argue, by way of analogy, that just as funeral
home employees who sell burial insurance are not considered
to be employed in the scope of an exempt retail establishment
because they sell non-retail products, so too are automobile
dealership employees who sell insurance and financing. How-
ever, as § 779.369 indicates, the "burial insurance contracts"
issued by the "burial insurance operations" of a "funeral home
establishment" are closely akin to "ordinary life insurance
policies." Seen in this light, it is readily understandable that,
in promulgating 29 C.F.R. § 779.369, which classified burial
associations, the Department of Labor perceived the "burial
insurance operations" as being remote from the central busi-
ness of a "funeral home establishment" in much the same way
that the manufacture of rollers for cotton mills was found by
the Fourth Circuit to be "separate and distinct" from the retail
sale of lumber in *Davis v. Goodman Lumber Co*. In contrast,
the finance and insurance packages sold by appellees are an
integral part of the dealerships' retail business.

## CONCLUSION

For the reasons stated above, the judgments of the District Courts are REVERSED and the three cases are REMANDED to the District Courts for further proceedings consistent with this opinion.